(No. 16480.—Reversed in part and remanded.)
THE UNION BANK OF CHICAGO, Appellee, *vs.* FRANK E.
GALLUP *et al.* Appellants.

*Opinion filed April 24, 1925—Rehearing denied June 9, 1925.*

1. APPEALS AND ERRORS—*findings of master may be reviewed in reviewing decree.* While the master's report is *prima facie* correct it is of an advisory nature, only, and where exceptions thereto are overruled and a decree is entered in accordance therewith, all facts are open for consideration in a reviewing court without regard to the finding of the master upon any particular question of fact, as the ultimate and final question on review is whether the decree rendered by the chancellor is proper under the law and the evidence.

2. DEBTOR AND CREDITOR—*judgment creditor must take notice of rights of party in possession.* Actual, open, exclusive and visible possession by a third person is constructive notice to a purchaser of all the rights of the possessor at the time of the purchase, and a judgment creditor stands in the relation of a subsequent purchaser so far as notice is concerned.

3. SAME—*possession, to be notice to purchaser or creditor, must be exclusive.* Where the record owner of property is in possession and a second party is likewise in possession, the possession of the latter is not notice to purchasers or judgment creditors of rights which he may claim in the premises, but his possession, to be such notice, must be exclusive and unequivocal.

4. SAME—*when only portion of conveyance will be set aside as in fraud of creditors.* On a bill filed by a creditor in aid of judgments, a conveyance from a father to his son will not be set aside in its entirety where the son was in the actual, exclusive and visible possession of a portion of the land under a written contract at the time the notes were given for which the judgments were rendered, but as to another tract for which there was only an alleged oral contract and which the father continued to occupy, the oral contract will be held to have been subject to the lien of the judgments, and the deed as to that portion will be set aside where there is not sufficient evidence of payment of the purchase price.

THOMPSON, J., dissenting.

APPEAL from the Circuit Court of Peoria county; the
Hon. CHARLES V. MILES, Judge, presiding.

VanNatta & King, for appellants.

Church, Haft & Robertson, and Kirk & Shurt-leff, for appellee.

Mr. Justice Stone delivered the opinion of the court:

The appellee filed its bill in the circuit court of Peoria county in aid of two certain judgments procured on February 10, 1920, against the appellant Frank E. Gallup, each by confession, on judgment notes dated May 31, 1919. One judgment was for $3016.67 and the other for $3225. The bill alleges that Frank E. Gallup was the owner of 160 acres of land in Peoria county, described as the northeast quarter of section 18, township 11, north, range 8, east of the fourth principal meridian, excepting therefrom the right of way of the Atchison, Topeka and Santa Fe Railway Company, which crosses this land east and west, near the middle of the tract; that on the 21st of January, 1920, prior to the entry of the judgments, Frank E. Gallup fraudulently conveyed this property to his son, Frank S. Gallup, for the purpose of defrauding his creditors and preventing a levy on and sale of such real estate to satisfy executions issued on these judgments. The bill prays that the deed, so far as the complainant is concerned, be set aside and declared null and void, and that the complainant be authorized to proceed to sell the land under levy and execution. The defendants to the bill answered, and the cause was referred to the master in chancery, who heard the evidence and reported. His conclusions were that the deed from Frank E. Gallup of January 21, 1920, to Frank S. Gallup, was a fraud upon creditors and he recommended the same be set aside. The chancellor overruled exceptions to the master's report and entered a decree in accordance with the recommendations therein.

The appellants defended against the bill on the ground that on February 25, 1919, prior to the making of the notes

upon which the judgments herein were based, Frank E. Gallup by a written contract sold the north 80 of this 160 acres of land, which is the tract north of the railroad, to Frank S. Gallup for $200 per acre. The provisions of that contract were, that Frank S. was to pay the sum of $4000 to his father on or before July 1, 1919, and was to assume and pay off a $11,000 mortgage covering the entire farm. The contract also provided that when these payments, and the $1000 balance on the purchase price, were paid a deed should be delivered. As to the south tract, amounting to approximately 67 acres, the defense was that a short time after the making of the written contract an oral contract was entered into between the parties by which Frank S. was to take over the balance of the farm at same price per acre.

The appellants urge here, first, that the possession of Frank S. Gallup under the written and oral contracts with his father was sufficient to put the appellee on inquiry as to his rights under his contracts as ·to both the north and south tracts. They further claim that the evidence shows complete payment of the contract price prior to the making of the deed on January 21, 1920.

The undisputed evidence is, that Chauncey Gallup, father of Frank E. and grandfather of Frank S. Gallup, at one time owned this land. Upon his death the land became the property of Frank E. Gallup and Hattie E. White, his sister. About the time of the making of the written contract of sale between Frank S. and his father, Frank E., the latter purchased the rights of Hattie E. White in the land, and it was for this purpose that the mortgage of $11,000 was placed upon the farm. There is no controversy as to the *bona fides* of the written contract, nor can there be, as the same was entered into nearly three months before the making of the notes on which the judgments in question were based. It is also conceded that Frank S. paid some money to Frank E., but it is urged that the cross-examination of the appellants shows that their story as to the payment of

the purchase price of the land by Frank S. to his father is untrue, and that it, in fact, appears from such evidence that the deed was fraudulent. The master so found.

The appellee urges that the master having seen and heard the witnesses, and his conclusions having been adopted by the chancellor, this court is bound by them unless such conclusions are clearly against the weight of the evidence. Numerous cases are cited in support of this proposition. It was, however, held in *Chechik* v. *Koletsky*, 311 Ill. 433, that while such has been stated to be the rule in certain cases there cited, that rule is not the law, and the opinion cites with approval *Corbly* v. *Corbly*, 280 Ill. 278, *Kelly* v. *Fahrney*, 242 id. 240, and *Fairbury Agricultural Board* v. *Holly*, 169 id. 9, where it is held that while in cases where witnesses are produced and examined in open court the finding of the court will not be disturbed unless it is manifestly and clearly against the weight of the evidence, such is not the rule as to findings of a master in chancery; that in any case the facts are found by the court, and while the master's report is *prima facie* correct, it is of an advisory nature, only; that all facts are open for consideration, in the first instance by the trial court, and in case of appeal, by the reviewing court; that without regard to the finding of the master upon any particular question of fact, the ultimate and final question in this court is, Was the decree rendered by the chancellor the proper one under the law and the evidence?

In considering the record in this case, the evidence is naturally divided into two parts: that relating to the written contract for the north 80 of this farm, and that relating to the oral contract for the sale of the south 67 acres.

It is undisputed that Frank S. Gallup had been a tenant on the north 80 of this land for a number of years prior to making the written contract and since that time has farmed all of it. It appears from the evidence that in 1918 his father, Frank E., had a sale and disposed of his farm

implements and equipment, and that since that time he has not farmed any portion of the premises. It is also shown that there is a house on each of these two tracts of land,— one on the 80 acres north of the railroad, where Frank S. has lived for a number of years, and the other on the southeast corner of the 67-acre tract south of the railroad, in which Frank E. has lived for a number of years, with the exception of one year when he resided in Peoria. The testimony of neighbors shows that for a portion of the time in which Frank S. lived on the north 80 and his father on the 67-acre tract the former farmed the north part and the latter the south part. The witness Frank Burns testified that he worked for both Frank S. and Frank E. Gallup; that the former lived on the north side of the railroad and the latter on the south side; that the former paid the witness for work done by him on the north side of the railroad and the latter for his work on the south side; that in the fall of 1919 Frank S. had corn on both sides of the track.

The appellants contend that the possession of Frank S. Gallup was notice to the appellee of his rights, while the appellee argues that Frank S. having been in possession as tenant, his possession was that merely of Frank E. The rule is, that where one purchases land of another which is at the time of the purchase in the actual, open, exclusive and visible possession of a third person, such possession is constructive notice to the purchaser of all the rights whatever of the possessor of the land at the time of the purchase. (*Mauvaisterre Drainage District* v. *Frank,* 313 Ill. 431; *Carr* v. *Brennan,* 166 id. 108; *Farmers' Nat. Bank* v. *Sperling,* 113 id. 273; *Coari* v. *Olsen,* 91 id. 273; 2 Sugden on Vendors,—8th Am. ed.—343.) A judgment creditor stands in the relation of a subsequent purchaser so far as notice is concerned. *German-American Bank* v. *Martin,* 277 Ill. 629.

The evidence shows that Frank S. Gallup was a tenant of his father, so far as concerns the south 67 acres of the

land, up to the time of the oral contract, if there was one, and that his father was likewise living on those premises. Frank S. therefore could not be said to have had exclusive possession of the south 67 acres of this land at the time the judgments were entered. Where the record owner of property is in possession and a second party is likewise in possession, the possession of the latter is not notice to purchasers or judgment creditors of rights which he may claim in the premises, but his possession, in order to be such notice, must be exclusive and unequivocal. (*Gray* v. *Lamb,* 207 Ill. 258; *Stone* v. *Cook,* 79 id. 424.) So far as the north 80 is concerned, however, it is evident from the existence of the written contract entered into between Frank S. and his father, that thereafter the possession of Frank S. was not that of tenant of his father but was exclusive possession under his contract of purchase. We are of the opinion, therefore, that such possession of the north 80 acres of this farm on the part of Frank S. was notice of his rights under his contract, sufficient to put a subsequent purchaser or judgment creditor on inquiry as to what his rights actually were. Certainly, with such notice a judgment creditor could not sell under execution any portion of this farm which Frank E. would have no right to sell had no judgments existed. In other words, a judgment creditor's rights, where he has notice, attach only to the property interest of the judgment debtor in the property, and under this written contract it is clear that the elder Gallup would have had no right to dispose of the 80-acre tract of this farm, and whether he claimed to own it or not does not affect the validity of his contract of sale to his son, Frank S.

The testimony of both Frank S. and Frank E. Gallup is that the entire purchase price of both these tracts of land, aside from the $11,000 mortgage, has been paid. It is evident from checks and canceled notes introduced in evidence, which the undisputed testimony of both Frank S.

and Frank E. shows were paid by the former, that a considerable sum of money was paid by Frank S. to his father. His father says it is all paid, and while the evidence does not, in our opinion, show that this is true as to all of the land, it is evident from the corroborated statements of Frank S. and Frank E. that an amount equal to the balance of the purchase price of the north 80 acres of land over and above the mortgage of $11,000 on the whole farm has been paid. We are of the opinion, therefore, that as to the north 80 acres of this farm the chancellor erred in setting aside the deed of January 21, 1920. As to the south 67 acres, however, the case of Frank S. is by no means so strong. His father is shown to be in possession of this south 67 acres and living on it. While not actively engaged in farming at the time the notes were made and the judgments thereon entered, he was living there, and with the exception noted had been doing so for a number of years. The evidence shows that after the making of these notes, checks were given to him by different grain dealers as the purchase price of grain, and while it is contended by the appellants that these payments for grain were made to him at the direction of Frank S. as part payment of the land purchased, we are not convinced that the evidence so shows.

We are of the opinion that exclusive possession of the south tract is not shown to have been in Frank S., and that his possession, therefore, was not notice to judgment creditors of his claims in the land. Nor do we think that the evidence shows that payment of the purchase price of the south tract is shown to have been completed. His alleged oral contract for the purchase of that tract must therefore be held to be subject to the lien of these judgments. The chancellor was therefore right in setting the deed aside so far as it affected the south 67 acres of land.

The decree will be affirmed in part and reversed in part and the cause remanded, with directions to enter a decree

setting aside the deed of January 21, 1920, as to that portion of the farm lying south of the railroad, as against appellee's judgment.

*Reversed in part and remanded, with directions.*

Mr. JUSTICE THOMPSON, dissenting.