62 N.J. Super. 133 (1960)
162 A.2d 132
VILLAGE OF RIDGEFIELD PARK ET AL. PLAINTIFFS,
v.
BERGEN COUNTY BOARD OF TAXATION ET AL. DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 7, 1960.
*136 Messrs. Morrison, Lloyd & Griggs (Mr. William R. Morrison, appearing) attorneys for plaintiffs.
Mr. Theodore I. Botter, Deputy Attorney General, appeared for defendant Bergen County Board of Taxation (Mr. David D. Furman, Attorney General, attorney)
WAESCHE, J.S.C.
This opinion deals with that part of this suit which is in lieu of the prerogative writ of mandamus. The plaintiffs are seeking a judgment of this court in lieu of mandamus which, in general, will peremptorily command and strictly enjoin the Bergen County Board of Taxation to equalize the assessed value of all taxable real and personal property of Bergen County so that each taxing district of Bergen County shall bear its full, equal and just share of the Bergen County taxes; and to further order the Bergen County Board of Taxation to do everything required or permitted by law which may be necessary to secure the taxation of all taxable property in Bergen County at its true value in order that all taxable property in Bergen County shall bear its full, equal and just share of taxes. Some of the principal features of this troublesome problem were discussed in the opinion filed in this cause on April 12, 1960. Village of Ridgefield Park v. Bergen Cty. Bd. of Taxation, 61 N.J. Super. 170 (Law *137 Div. 1960). In that opinion, attention was directed to the fact that it had been incontestably established by the evidence that the Bergen County Board of Taxation made no effort whatever to equalize the personal property assessments; and that, as a result, the Bergen County taxes had not been fairly and justly apportioned among the taxing districts of Bergen County. By reason of this failure to equalize the personal property assessments, some taxing districts have been paying much less than their full and just share of the county taxes, while other districts have been paying considerably more than their full and just share. The plaintiffs seek to effectuate an improvement of this inequitable condition by an order of this court.
The 1875 amendment to the 1844 Constitution of New Jersey required that property shall be assessed for taxation by uniform rules. The Constitution of 1947 also specifically requires that:
"Property shall be assessed for taxation under general laws and by uniform rules." Art. VIII, sec. I, par. 1.
The Constitution of New Jersey is the source of all power and authority in the government of this State. The constitutional provision that property "shall" be assessed for taxation by "uniform rules" is a solemn mandate of the sovereign people of New Jersey themselves which is directed to all branches and divisions of our State Government. The New Jersey Constitution itself requires every state officer, before entering upon the duties of his office, to take an oath or affirmation to support the Constitution and to perform the duties of his office faithfully, Art. VII, sec. I, par. 1. The word "shall," as used in this section of the Constitution, means "must." In the case of the Application of George C. Braden, 105 Ohio App. 285, 148 N.E.2d 83 (Ct. App. 1957), appeal dismissed 167 Ohio St. 548, 150 N.E.2d 294 (Sup. Ct. 1958) it was held that the word "shall" in the Constitution of Ohio means "must." And in the case of State ex rel. Gouge v. Burrow, 119 Tenn. 376, 104 S.W. *138 526 (Sup. Ct. 1907), the court held that the word "shall" in the Constitution of Tennessee is equivalent to "must." The opinion in the Tennessee Supreme Court also said:
"The provisions of these solemn instruments [constitutions] are not advisory, or mere suggestions of what would be fit and proper, but commands which must be obeyed. * * * The supremacy and permanency of republics depend upon the maintenance of the fundamental law, in its integrity, as written in Constitutions adopted by the people; and it is the solemn duty of all those temporarily vested with power, in all departments of the state, to do this. The necessities of a particular case will not justify a departure from the organic law. It is by such insidious process and gradual encroachment that constitutional limitations and government by the people are weakened and eventually destroyed. It has been well said:
`One step taken by the Legislature or judiciary in enlarging the powers of government opens the door for another, which will be sure to follow, and so the process goes on until all respect for the fundamental law is lost, and the powers of government are just what those in authority please to make or call them.'
Oakley v. Aspinwall, 3 N.Y. 547, 568."
See, also, the case of Jones v. Freeman, 193 Okla. 554, 146 P.2d 564 (Sup. Ct. 1943).
In 11 Am. Jur., sec. 69, p. 686, this constitutional principle is stated as follows:
"It is the general rule to regard constitutional provisions as mandatory, and not to leave any discretion to the will of a legislature to obey or to disregard them. * * * The use of the word "shall" is generally considered as an indication of the mandatory character of the provision."
In the case of Carow v. Board of Education of City of New York, 272 N.Y. 341, 6 N.E.2d 47 (Ct. App. 1936), the court held that the Legislature was under a duty to provide the machinery required to carry out the mandate of the constitution of the state. In 16 C.J.S. Constitutional Law § 65, p. 178, appears the following statement:
"Mandatory provisions of a constitution are binding on the legislature, and it is under obligation to perform duties imposed on it by the constitution."
*139 The Legislature is therefore under a solemn obligation to provide adequate means for assessing property for taxes by a uniform rule. No one may waive the public interest and welfare as determined by the Constitution. In the case of Fischer v. Twp. of Bedminster, 5 N.J. 534, 541 (1950), our Supreme Court said:
"In the construction of the Constitution, we are enjoined to effectuate the intent of the people in adopting it; and this is to be found in the written expression. * * * There is * * * no room for construction where the expression is plain and unambiguous."
In the case of Hargraves, Mayor, v. Solomon, 178 Ark. 11, 9 S.W.2d 797 (Sup. Ct. 1928), the court said:
"The general rule is well established that constitutional provisions are to be construed as mandatory unless by their express terms or by necessary implication a different intention is manifest. * * * Our duty is to carry out the provisions of the Constitution as indicated by its plain language."
The object of the constitutional provision requiring the assessment of property for taxation by uniform rules is to secure to the people of this State the equalization of the tax burden levied on property insofar as it is practical. In the case of Trustees for Support of Public Schools v. City of Trenton, 30 N.J. Eq. 667, 677, 678 (E. & A. 1879), in an opinion written by Justice Depue, the court said:
"The reasons which induced the adoption of this constitutional provision are deep-seated in principles of public policy. Its object was to secure to the people of the state the equalization of taxation, so far as was practicable, by requiring the imposition of taxes on property by general laws, on the principle of uniformity in the subjects of taxation and in valuation."
That a compliance with this provision of the Constitution is highly important to the welfare of the people is so plainly obvious as to make it unnecessary to discuss. The courts of New Jersey have said that the framers of the Constitution *140 especially made this provision self-executing, because of its special importance to the people individually and collectively. No statute, therefore, is necessary to effectuate this constitutional provision. It means that no valuation assessment can be made lawfully on property except by a uniform rule even in the absence of enabling legislation; and it also means that any assessment levied in violation of this constitutional mandate is absolutely void ab initio. Hence, the mode of assessing the value of both real and personal property for the county tax must be uniform throughout the county. Since the constitutional provision is mandatory, the legislative, executive, and judicial branches of the government, all creatures of the Constitution, are under a duty to comply with this constitutional command. In the case of State, North Ward National Bank of Newark, pros. v. City of Newark, 39 N.J.L. 380, 391 (Sup. Ct. 1877), reversed on other grounds 40 N.J.L. 558 (E. & A. 1878), the Supreme Court said:
"That it was intended by this amendment [the 1875 amendment] to establish a uniform rule, which should be the only rule for assessing property, is so plainly manifested in the language used as to admit of no doubt."
In the case of Jersey City v. Vreeland, 43 N.J.L. 638 (E. & A. 1881), the court said:
"This constitutional provision executed itself, * * *. Under this constitutional provision no tax can lawfully be laid upon property which is not determined * * * by a valuation of the property with respect to which it is laid upon a uniform rule of valuation * * *."
In the case of Sisters of Charity of St. Elizabeth v. Chatham Tp., 51 N.J.L. 89 (Sup. Ct. 1888), reversed on other grounds 52 N.J.L. 373 (E. & A. 1890), the Supreme Court said:
"That amendment [the 1875 amendment] was self-executing; * * *. It is addressed not merely nor primarily to the legislature but directly to the assessing officers, * * *."
*141 See also the case of Taylor v. Smith, 50 N.J.L. 101 (Sup. Ct. 1887), and Cooper Hospital v. Camden, 68 N.J.L. 691 (E. & A. 1902).
Although the Legislature is under a solemn obligation to provide adequate means for assessing the value of real and personal property for taxation by a uniform rule, the mere fact that such legislation may be inadequate does not render the constitutional provision ineffective, People v. Carroll, 3 N.Y.2d 686, 148 N.E.2d 875 (Ct. App. 1958); Kraus v. City of Cleveland, 89 Ohio App. 504, 96 N.E.2d 314 (App. Ct. 1950), appeal dismissed 155 Ohio St. 98, 97 N.E.2d 549 (Sup. Ct. 1951); 16 C.J.S. Constitutional Law § 48, p. 144; 11 Am. Jur., sec. 75, p. 692. The Constitution itself directly commands that assessors and county boards of taxation shall secure the assessment of the real and personal property in the county by a uniform rule in order that all taxable property shall bear its full, equal and just share of taxes. In the case of People ex rel. Bracher, County Treasurer v. Orvis, 301 Ill. 350, 133 N.E. 787, 24 A.L.R. 325 (1922), the Supreme Court of Illinois said:
"Equalization of assessments is the adjustment of aggregate values of property as between different taxing districts, so that the value of the whole tax imposed upon each taxing district shall be justly proportioned to the value of the taxable property within its limits, in order that one county or taxing district shall not pay a higher tax in proportion to the value of its taxable property than another. * * *
This provision of the Constitution is a mandate issued to taxing authorities to require uniformity of taxation. This principle lies at the foundation of all taxing power, for the reason that one man should not be compelled to pay a greater proportion of taxes according to the value of his property than another."
In the case of People v. Southwestern Bell Telephone Co., 377 Ill. 303, 36 N.E.2d 362, 364 (Sup. Ct. 1941), the court said:
"This court has always recognized that all laws relating to taxation and the enforcement thereof by taxing bodies are subject to *142 the requirements of equality and uniformity of taxation. We have construed the command for uniformity to mean that taxation must be uniform as to the class upon which it operates and that the uniformity demanded applies to property of like kind and character and similarly situated."
In the case of People ex rel. Tedrick v. Allied Oil Corp., 388 Ill. 219, 57 N.E.2d 859 (Sup. Ct. 1944), the court said:
"That equality and uniformity in taxation, in accordance with the value of the property is guaranteed by the constitution of this State and that of the United States, cannot be denied. * * * The constitution requires that one person shall not be compelled to pay a greater proportion of the taxes according to the value of his property than another and does not permit the valuation by taxing officials of one piece of property at a certain proportion of its true value and other property in the same taxing district at a substantially less or greater proportion of its true value."
In 3 Cooley on Taxation, sec. 1195, p. 2390, it is stated as follows:
"Equalization of assessments has, for its general purpose, to bring the assessments of different parts of a taxing district to the same relative standard, so that no one of the parts may be compelled to pay a disproportionate part of the tax. To accomplish this purpose assessment rolls are equalized by county courts, boards of supervisors or commissioners, and the aggregate of the county assessments by a state board established for the purpose. This is not done by changing individual assessments, but by fixing the aggregate sums for the several districts at what, in the opinion of the board, they should be, so that general taxes may be levied according to this determination, instead of on the assessor's footings. The power to create boards of equalization for such purposes is well settled, and a statutory provision requiring equalization is mandatory so as to make a failure to comply a jurisdictional defect."
In the opinion previously filed in this case there is a discussion of the power and the duty imposed by the Legislature on county boards of taxation to equalize the assessed value of both the real and the personal property throughout the county. To that discussion is added this brief supplement. Chapter 144 of the Laws of 1883, p. 192 *143 provided that the county board of assessors should compute and ascertain the aggregate value of the taxable real and personal property contained in the tax duplicates of the several assessors. If it appeared to them that the value of the property contained in any duplicate was relatively less than the value of other property in the county, the board of assessors could adjust the proportion and add thereto such percentage of the aggregate value of the real and personal property as appeared to them just and proper. This provision of the act of 1883 was included in the General Tax Act of 1903, 4 C.S. 5075. Section 21 of the Laws of 1903, p. 407; 4 C.S. 5102, provided that the county board of assessors should make a careful comparison of the tax duplicates; and, for the purpose of apportioning the county taxes, they should add to the total assessed valuation shown on any duplicate such amount as would justly equalize the county tax burden. The county board of assessors was succeeded by the county board of taxation, L. 1906, p. 210; 4 C.S. 5115, sec. 37(p). The county board of taxation was given the power to equalize the assessed value of all property in the respective taxing districts. 4 C.S. 5118, secs. 37(s) and (t). In the case of Englewood v. Hopper, 54 N.J.L. 544 (Sup. Ct. 1892), the Board of Assessors of Bergen County added to the total valuation assessments of the real and personal property of Englewood a lump sum. The court held that the Board of Assessors of Bergen County had the right to increase the aggregate valuations of the real and personal property but such power must be exercised in strict compliance with the provisions of the statute. It thus appears that county boards of taxation, under the Constitution and by statute, have been given the power and duty to equalize the valuation assessments on both real and personal property throughout the county. The grant of the authority to equalize carries with it the authority to perform whatever necessary acts are incident thereto, City of Passaic v. Passaic County Board of Taxation, 18 N.J. 371 (1955).
*144 In his inaugural address as Governor of New Jersey, Woodrow Wilson said that New Jersey had absolutely no uniform system of assessment, and that our whole system of taxation needed overhauling from top to bottom. Governor Driscoll, in his inaugural address to the Legislature on January 21, 1947, said that Woodrow Wilson's statements were as true in 1947 as they were when made in 1911. The reports of the Commission on State Tax Policy show that the statements of former Governor Wilson are as true yet today as they were when made nearly fifty years ago. From a study of the reports of the Commission on State Tax Policy one can only conclude that it has been much longer than 50 years since county taxes have been fairly and justly apportioned among the taxing districts of any county in New Jersey. In fact, no attempt even is made in any county to apportion county taxes among the county's taxing districts on the basis of a uniform method of valuation applicable to all the taxable property throughout the county. That the Constitution requires the assessment of personal property by a rule uniformly applied throughout the county for apportioning county taxes is looked upon as a mere noble experiment. But this is a dreadfully erroneous point of view. This provision of the Constitution is of the highest importance to the welfare of the people of this State; and the failure to comply with the constitutional command is not due to the apathy or indifference of the public. Until recently, the people have had very little knowledge or understanding of this highly inequitable and unjust condition. The method of assessing the value of property for apportioning county taxes is so exceedingly complex that it is practically impossible for the public to realize the existence of any injustice in the distribution of county taxes. The ever increasing burden of taxation finally brought this situation somewhat to their attention. If the tax burden is evenly and equitably distributed, it might be endured without noticeable damage to our social or economic structure; and should it become too heavy, the public budget can be reduced *145 to a point in keeping with the public's ability to pay. A ship may be fully loaded down to her Plimsoll marks, and still safely navigate the open seas, provided the cargo within her hull is evenly distributed and securely stowed. But when the cargo is loaded unevenly, or when it is shifted so that its weight is dangerously unbalanced, then the ship may be in imminent danger of floundering, or even of sinking. An unequal and inequitable distribution of the tax burden could be just as perilous to the State. As Chief Justice Marshall said in the case of McCulloch v. Maryland, 4 Wheat. 316, 431, 4 L.Ed. 579 (1819), "the power to tax involves the power to destroy."
There is much evidence in New Jersey of irreparable damage which has resulted from unequal and unjust taxation. People, commerce and industry try to avoid and to move away from areas where it exists in order to escape its ruinous consequences. The constitutional provision requiring that property be assessed for taxation by uniform rules is intended to provide adequate protection against this menace. To uphold the Constitution in this respect is the problem this court faces in arriving at its decision in this case. It is ridiculous to have a Constitution unless it is upheld. There is no firmer test of our democratic form of government than the fair sharing of the cost of government.
It has been said that tomorrow marches by on the feet of the children of today. We should prepare the way for them by upholding the Constitution, as our forbears, in their time, provided a way for protecting our security and happiness by framing the Constitution. The primary responsibility for assessing property for taxation by uniform rules lies with the legislative and with the executive branches of the government. If the legislative and the executive branches of the government should fail to support the principle of equal and fair distribution of taxes, the judicial branch will then be standing alone in its efforts to uphold the Constitution in this respect. In the event that should happen, the constitutional ideal of equal taxation will collapse, *146 and one of freedom's stars will fall from the firmament of our American democracy, resulting in a serious loss of faith in our Constitution. A court cannot substitute its authority under the Constitution for a declination of the will of any other branch or division of the State's Government. Of the three branches of government, the executive, the legislative, and the judicial, the judicial branch is the weakest, In re Megill, 114 N.J. Eq. 604 (Ch. 1933). The court can neither adopt legislation nor administer it. The court has no more power to assess or to equalize taxes than the Legislature has to adjudge law suits. As Alexander Hamilton expressed it in The Federalist, "It [the judicial branch of our government] has no influence over either the sword or the purse." In the case of State Board of Assessors v. Central R.R. Co., 48 N.J.L. 146, 287, 288 (E. & A. 1886), the court said that if the power to tax is exercised oppressively, the responsibility of the Legislature is not to the courts, but to the people by whom its members are elected.
The evidence in this case does not disclose any lack of ability nor unwillingness of the Bergen County Board of Taxation equitably to apportion the county taxes among the various taxing districts by a uniform rule. The county board has been following the advice of the Attorney General of New Jersey to the effect that county boards of taxation have no authority to equalize the aggregate of the personal property assessments among the various taxing districts of a county; and the evidence indicates that it is probably impossible for the county board to assess individually all the personal property in Bergen County within the time permitted by law and within its budgetary allowances.
We are living in an anxious world, and in a world of great uncertainty. In order to prepare ourselves for whatever may be threatening us from without our nation; we must be strong within it. A just equalization of the already oppressive and constantly increasing burden of property taxes is more important to our welfare and security than the goods *147 and services purchased with the money collected through the taxation of property, because the property assessed for taxation is the source of most of our public goods and services. An unequal valuation will eventually dry up the headwater springs which feed the property tax stream. When the taxes levied on property exceed all benefits of ownership, the property is abandoned. There is an old proverb which says when we drink of the stream, we should remember the spring. Taxation is not as some vast river of unfailing source.
For the foregoing reasons, and in the hope that it may accomplish some good, I will enter a judgment peremptorily commanding and strictly enjoining the Bergen County Board of Taxation to equalize the assessed value of all taxable real and personal property of Bergen County on the basis of its true value, so that each taxing district shall bear its full, equal and just share of the Bergen County taxes; and I will further order the said Board of Taxation to do everything required or permitted by law which may be necessary in order to secure the taxation of all taxable real and personal property in Bergen County equally and at its true value so that all taxable property in Bergen County, real and personal, shall bear its full, equal and just share of taxes. I will enter this order although recognizing the difficulty involved should it become necessary to bring a proceeding to enforce it. I will also enter this order even though it has no force outside of Bergen County, and, therefore, it will have very little effect on the condition which is prevalent throughout the State of New Jersey.