69 N.J. Super. 27 (1961)
173 A.2d 449
OLIVIA WRIGHTSON SWITZ, PLAINTIFF,
v.
WILLIAM KINGSLEY, ACTING DIRECTOR, ETC. ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 9, 1961.
*30 Mr. Herbert J. Hannoch argued the cause for plaintiff (Messrs. Hannoch, Weisman, Myers, Stern and Besser, attorneys).
Mr. Alan B. Handler, Deputy Attorney General, argued the cause for defendants Kingsley and Monmouth County Board of Taxation (Mr. David D. Furman, Attorney General, attorney).
KNIGHT, J.S.C. (opinion delivered orally).
This matter is before the court on a motion for summary judgment by the plaintiff and a cross motion for summary judgment by the defendants, Director and the Monmouth County Board of Taxation. The defendants, Township of Middletown and William C. Johnson, filed an answer stipulating that they agree to be bound and controlled by any judgment entered herein.
At the outset the court must determine whether Laws of 1960, Chapter 51, N.J.S.A. 54:4-2.25 et seq., in permitting each County Board of Taxation to establish the percentage of true value which shall be used for assessment purposes contravenes Article 8, sec. 1, par. 1 of the New Jersey Constitution, which requires that all real property shall be assessed according to the same standard of value. This question has been answered by two recent Supreme Court cases. In Village of Ridgefield Park v. Bergen County Board of Taxation, 31 N.J. 420, 425 (1960), the court, in *31 discussing the constitutional provision, stated that "[it] does not require that all real property taxed locally or for local use shall be assessed at true value. Rather it requires all such real property to be assessed `according to the same standard of value' which may be a percentage of true value." And in Switz v. Middletown Township, 23 N.J. 580, 593 (1957), that court stated:
"* * * It is mathematical truth that in this regard there can be no essential difference between true value and a common ratio of true value applicable alike to all in the same class. In either event, the base is true value, and the assessments are in fact made according to the same standard of value. The question is whether there are variations of ratio making for substantial inequality in the distribution of the burdens of government violative of basic right."
Thus, Laws of 1960, Chapter 51, does not contravene the Constitution in permitting a standard of value for taxation purposes which is less than true value.
Plaintiff argues that the provisions of the 1960 Tax Act violate the provision of the Constitution which requires that "property shall be assessed for taxation under general laws and by uniform rules," New Jersey Constitution, Article VIII, sec. 1, par. 1, since Chapter 51 permits each county to establish a different standard of valuation.
The basis of the constitutional provision is equality of treatment among taxpayers in like circumstances. Switz v. Middletown Township, 23 N.J. 580 (1957).
In his concurring opinion in Switz, supra, 23 N.J., at p. 609, Chief Justice Weintraub recognized this fact in stating:
"It seems clear to me that all the taxpayers of a county are entitled to equal treatment with respect to the distribution of the cost of county government."
Thus the question is whether permitting each county to set its own percentage of true value results in inequality of treatment among taxpayers within the same class. The *32 real property taxes which a given taxpayer must pay are solely for the purpose of financing municipal and county government, as the State receives no revenue through the taxation of real property. Under this system it is clear that a land owner in Monmouth County is not assessed for the cost of government outside of his or her county. The Monmouth County land owner is in a different class from the land owners in other counties. Hence it is readily apparent that as long as all land owners in Monmouth County are treated equally, there is no discrimination. This also answers plaintiff's contention that permitting each county to establish its own percentage discriminates among veterans who are entitled to a $500 exemption from the assessed value of their real property. Since all veterans within a county will be treated equally, there can be no inequality.
Laws of 1960, Chapter 51, does not discriminate among taxpayers similarly situated in respect to the method of assessment of real property and consequently does not violate the constitutional requirement that property be assessed for taxation under general laws and by uniform rules.
Plaintiff also attacks that part of N.J.S.A. 54:4-1 which provides that "In the assessment of acreage which is actively devoted to agricultural use, such value shall not be deemed to include prospective value for subdivisions or nonagricultural use," asserting that such a classification is unconstitutional. Plaintiff argues that the use of the word "deemed" creates a substantive rule of law creating an invalid classification of real property, while the defendant contends that the word "deemed" serves to create only a rebuttable presumption that such agricultural lands do not have subdivision or other value. Plaintiff cites State Tax Commission v. Wakefield, 222 Md. 543, 161 A.2d 676 (Md. Ct. App. 1960), where the court struck down a provision of the Farm Assessment Act, Code 1957, Art. 81, § 19 (b) which provided that:
*33 "Lands which are actively devoted to farm or agricultural use shall be assessed on the basis of such use, and shall not be assessed as if sub-divided or on any other basis."
The provision was held unconstitutional as providing for land classification in violation of Article XV of the Maryland Declaration of Rights.
There would appear to be little difference between the Maryland statute and that under consideration here. The mere use of the word "deemed" does not serve to cure an invalid classification. In its normal usage the word "deemed" means "adjudged" or "considered." If such was the usage intended here, there can be no doubt but that an absolute rule of law has been created. While it has been said that the term "deemed" when used in a statute may in some instances establish a conclusive presumption, but in others only a rebuttable one, depending on the context of the use, Brimm v. Cache Val. Banking Co., 2 Utah 2d 93, 269 P.2d 859 (Utah Sup. Ct.), in the instant case it would appear that a conclusive presumption was intended. The statute is framed in mandatory terms and is, in effect, a command to the assessor, expressed in the negative, which would connote an absolute rule of law. As such the sentence in N.J.S.A. 54:4-1 which reads, "In the assessment of acreage which is actively devoted to agricultural use, such value shall not be deemed to include prospective value for sub-divisions or non-agricultural use" creates a classification of land contravening the Constitution, and must be stricken.
The removal of this provision does not invalidate the act.
N.J.S.A. 54:4-2.32 provides that if any clause, sentence, paragraph, section or part of the act shall be invalidated the remainder of the act shall be effective. The rule of severability is based upon the intention of the Legislature, the necessary determination being whether the enactment can remain as a comprehensive piece of legislation without the excised portion. If so, severability may be applied. Angermeier v. Sea Girt, 27 N.J. 298, 311 (1958). Here the removal of the invalid sentence does not create a *34 void, since agricultural property will be covered by the remaining portion of N.J.S.A. 54:4-1.
Plaintiff also contends that the Legislature has no power to delegate the authority to fix ratios for real property assessment to the County Tax Board.
The power to levy a tax resides in the Legislature and may not be delegated to appointed officials, Township of Bernards v. Allen, 61 N.J.L. 228, 238 (E. & A. 1897); Van Cleve v. Passaic Valley Sewerage Com'rs, 71 N.J.L. 574, 581 (E. & A. 1905), although the Legislature may "confer upon political divisions powers to legislate and provide revenue for defraying the expenses of the local governments," Township of Bernards v. Allen, supra, 61 N.J.L, at pp. 237, 238. However, while the basic power to levy a tax may not be delegable, certain incidents of that power are. This distinction was made by Justice Garrison in Van Cleve v. Passaic Valley Sewerage Com'rs, supra, 71 N.J.L., at p. 581, wherein he stated:
"Every system of taxation consists of two parts  the elements that enter into the imposition of the tax, and the steps taken for its assessment and collection. The former is a legislative function conserved by constitutional prescriptions; the other is mere machinery. The latter may be delegated to other than governmental agencies; not so the former. Matters of computation, appraisement, adjustment, and such like, involving mere certainty of detail, follow the delegable power, in illustration of which the learned justice instanced the taxation of railroads and canals, the equalization of taxes, and the reassessment of benefits for improvements. But no element that enters essentially into the tax itself may be so delegated."
Under the 1960 Tax Act the County Board of Taxation, an appointed body, is given the authority to "establish the percentage level of taxable value of real property * * * for the purpose of assessing the taxable values to be used in levying taxes." Thus the Board is merely empowered to determine the percentage of true value which shall be used for assessments.
*35 The fixing of an assessment ratio is not an exercise of the power to levy taxes as it simply provides a formula to ascertain the tax rate to be applied. The ultimate tax burden is dependent upon the county and municipal budget, which authorizes the amount to be raised by taxation. R.S. 40:2-11.
Under previous legislation, where each municipality assessed at a different ratio the Board was required by statute to ascertain the general ratio or percentage of full value at which real property in each taxing district was assessed and then prepare an equalization table to obtain a revised assessment for each district reflecting true value. R.S. 54:3-17. This requirement was recognized in Gibralter Corrugated Paper Co. v. North Bergen Tp., 20 N.J. 213, 221-222 (1955), and was declared to be a constitutional duty under the requirement of general laws and uniform rules (New Jersey Constitution, Article VIII, sec. 1, par. 1) in Village of Ridgefield Park v. Bergen County Bd. of Taxation, 62 N.J. Super. 133 (Law Div. 1960), reversed on other grounds, 33 N.J. 262 (1960). In view of the fact that equalization by the aggregate method has been said to be at best a substitute for local assessment at true value, City of Passaic v. Passaic County Bd. of Taxation, 18 N.J. 371, 381 (1955), and that equalization by the Board has been approved and upheld under the above authorities, it is clear that the authority given to the Board to set the percentage of assessment is correspondingly valid and not an improper delegation of legislative authority.
Finally, plaintiff's argument concerning incidental effects of varying percentages in different counties has been answered by Justice Heher in Switz v. Middletown Township, supra, 23 N.J., at p. 598:
"Neither local debt limitations nor the impact upon revenue of assessments at true value in relation to the public utility gross receipts tax is of major concern in this inquiry, for the Legislature has full power to provide for an immediate adjustment of the particular statutes to the altered local economy."
*36 In attacking the method of classification and assessment of personal property plaintiff contends that the provisions of the act violate the Constitution.
The statute provides that "the standard of value according to which tangible personal property used in business shall be assessed shall be the fair value thereof."
The taxable value of personalty used in business is then determined by applying the so-called "common level" percentage at which the taxing district in which such personalty is located assesses its real property. The common-level figure is ascertained by the Director of the Division of Taxation on an annual basis by a compilation of the actual sale price of real estate in each district and a comparison of such sale price to the actual assessment levied against the property sold. Thus if Blackacre, located in Taxing District A, is sold for $100,000 and the assessment levied on the property was $50,000, the ratio would be 50%. By averaging the percentages on properties sold, the Director obtains the so-called common level. Thus, if the common-level figure is 55%, the taxable value of business personalty in the district will be 55% of the fair market value of such personalty (or, depending on the subclassification of the personalty, one-quarter of the common level).
Since the common-level figure may vary among taxing districts within the same county, plaintiff contends that varying tax burdens will be placed upon individual taxpayers contrary to the requirement of general laws and uniform rules.
If the court were to stop at this point, plaintiff's position would be well taken. However, plaintiff has failed to complete her analysis of the structure of the act relating to taxation of personal property used in business. Unlike previous legislation, see Village of Ridgefield Park v. Bergen County Bd. of Taxation, 31 N.J. 420, 431 (1960), the statute under attack in this proceeding provides for the equalization of personal property used in business. N.J.S.A. 54:3-17 to 19.
*37 Since each municipality or taxing district will be uniformly assessing such personalty at the common level there will be equality among the taxpayers of such taxing district and the use of the equalization process will secure equality among taxpayers in the county. That such a system will produce "practical equality" was recognized in Village of Ridgefield Park v. Bergen County Bd. of Taxation, 31 N.J. 420, 428-429 (1960):
"With respect to real property, defendants contend the equalization of the aggregates thereof insures equality of treatment as among the municipalities of the county. It is true that practical equality (somewhat short of the ideal; see City of Passaic v. Passaic County Board of Taxation, 18 N.J. 371, 381 (1955)) is thereby achieved with respect to the pro rata allocation of the county burden among the municipalities as such. And if a municipality assessed its real property uniformly at some percentage of true value, such assessment plus the equalization process would achieve substantial equality among all of the individual taxpayers of that municipality with respect to the burden of county government. But unless all municipalities thus deal equally with all real property within their borders, there is discriminatory treatment as among the individual taxpayers of the county with respect to the burden of county government which the equalization process does not correct. This was recognized in Switz."
Any possible defect or inequality arising from the possibility of differing "common levels" among municipalities in a given county is cured by the provisions requiring the use of the equalization process in apportioning county taxes.
Insofar as the assessment of personal property not used in business is concerned, there can be no argument of inequality once it is determined that the county is a proper unit for tax classification. Under N.J.S.A. 54:4-9.1 non-business personal property is not assessed at the "common level" figure, the statute stating that the assessment shall be expressed at the percentage of fair value as is established at the percentage level for the taxation of real property within the county in which the municipality is located. Thus the assessment will be at a uniform percentage level throughout *38 the county, and there cannot be varying assessment rates among municipalities.
Under the 1960 Tax Act personal property has been classified for purpose of taxation. The major areas of classification are personalty used in business, personalty not used in business, and household personalty. N.J.S.A. 54:4-11 provides that all "machinery, implements, * * * and all other personal property used in business, other than inventories, farm machinery, farm livestock, crops and produce," shall have a taxable value expressed in terms of the common-level percentage at which real property in the taxing district is assessed. All inventories excepting raw material, supplies and small tools shall have a taxable value of one-quarter of such common level. The level for farm machinery, farm livestock and crops (excepting exempted growing crops) shall be one-quarter the percentage level established for real property in the county or one-quarter of the common level, whichever is lower.
N.J.S.A. 54:4-9.1 provides that tangible personal property not used in business, other than household personal property and personal effects, shall be assessed and taxed for local use at the general tax rate of the taxing district wherein such property is found, and that the assessment shall be expressed at the percentage of fair value established for the taxation of real property in the county.
Plaintiff asserts that the foregoing system of classification is unreasonable, having no relation to the object of the legislation, relying on Washington National Ins. Co. v. Board of Review, 1 N.J. 545 (1949). In that case the Supreme Court held that a provision of the Unemployment Compensation Act (N.J.S.A. 43:21-19) which included industrial life insurance agents within the coverage of the act while excluding other industrial insurance agents was an invalid classification. The decision was premised on the fact that there was no conceivable difference between those included and those excluded sufficient to justify the difference in classification. It is beyond question that the Legislature may *39 make distinctions having a rational basis and such distinction will be sustained if there is any conceivable factual basis for the legislative action. Washington National Ins. Co. v. Board of Review, supra; Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937).
Viewed in this context, it is evident that there can be no rational basis for differentiating between farm machinery and livestock and business machinery and equipment. Both are used for the production of income. Thus the act has arbitrarily favored persons engaging in farming for the purpose of profit over persons engaged in other types of activities for the purpose of financial gain. Such a distinction is arbitrary and must be struck from the act.
The remaining distinctions are valid. Certainly inventory is in a different class from fixed assets such as machinery. As for farm crops and produce, such would appear to be in the nature of inventory, hence properly classifiable in a different manner from machinery and equipment. As for the exemption of raw material, supplies and small tools, the difficulty of assessment and the expense of collection alone would be sufficient justification for the classification. See Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327 (1937).
The invalidation of the farm machinery and livestock classification does not necessitate the striking down of the entire act.
The invalid provisions are severable from the remainder of the act for the same reasons which the court has previously expressed in relation to that portion of N.J.S.A. 54:4-1 which was declared unconstitutional. Here also the removal of the excised portion does not create a void. As a consequence of the removal, farm machinery and livestock will fall within the ambit of N.J.S.A. 54:4-11(a) where it properly belongs.
*40 Plaintiff attacks N.J.S.A. 54:4-9.2 relating to tangible household personalty. In pressing her argument plaintiff admits that the Legislature possesses the power to tax household personalty or exempt it, but asserts that that portion of the section which permits each municipality to determine whether or not to tax household personalty violates the provisions requiring general laws, and constitutes an improper delegation of the legislative power.
As previously stated, the basis of the constitutional provision is equality among taxpayers in like circumstances. Switz v. Middletown Twp., 23 N.J. 580 (1957). Under the act in question household personalty, when taxed, is not included in the tax base for apportioning county taxes. (N.J.S.A. 54:4-9.2) Thus for household property taxes, each municipality is a separate unit and as long as all taxpayers within the unit are treated equally the constitutional provision has not been violated.
Plaintiff challenges the delegation by the Legislature of the right to exempt household personal property, asserting that such a right cannot be delegated. However, subject to constitutional restrictions the Legislature may delegate the power to exempt certain property to the municipalities. 16 McQuillin, Municipal Corporations, sec. 44.65, page 173 (3d ed. 1950); Colton v. City of Montpelier, 71 Vt. 413, 45 A. 1039 (Vt. Sup. Ct. 1899); Rixford Mfg. Co. v. Town of Highgate, 102 Vt. 1, 144 A. 680 (Sup. Ct. 1929); City of Erie v. Griswold, 184 Pa. St. 435, 39 A. 231 (Sup. Ct. 1898); Kimball-Tyler Company v. City of Baltimore, 214 Md. 86, 133 A.2d 433 (Ct. App. 1957). Cf. St. Lucie Estates v. Ashley, 105 Fla. 534, 141 So. 738 (Sup. Ct.). And in New Jersey it has been recognized that a municipality cannot exempt property from taxation without legislative authority. Jersey City v. North Jersey Street Railway Co., 78 N.J.L. 72 (Sup. Ct. 1909); Whipple v. Teaneck Township, 135 N.J.L. 345 (E. & A. 1946).
Thus a delegation in New Jersey must be measured by the constitutional requirement of general laws and uniform *41 rules. The delegation found in the 1960 Tax Act merely permits each municipality to exempt household personalty and personal effects. Since tax revenue from these items is only used for local purposes and is not figured into the county tax, equality and uniformity among those taxpayers similarly circumstanced are achieved.
Therefore the delegation by the Legislature does not violate the Constitution and is valid. Compare Two Guys from Harrison v. Furman, 32 N.J. 199 (1960), sustaining the Sunday Closing Law, N.J.S.A. 2A:171-5.8 et seq. which gave each county the option of accepting or rejecting its provisions, and Wagner v. City of Newark, 42 N.J. Super. 193 (Law Div. 1956), reversed on other grounds 24 N.J. 467 (1957), dealing with the 1953 Rent Control Act, N.J.S.A. 2A:42-14 et seq. which became effective at the option of the municipality.
As a corollary to her argument regarding delegation, plaintiff asserts that the delegated power is invalid since the power to exempt is given to the governing body rather than to the electorate, citing Attorney General v. McGuinness, 78 N.J.L. 346 (E. & A. 1910), and President, etc., City of Paterson v. Society, 24 N.J.L. 385 (Sup. Ct. 1854). Those cases are inapposite, dealing with so-called referendum statutes rather than delegation of legislative powers. In fact this distinction is recognized in the McGuinness case. It cannot be doubted that the Legislature may enact laws and grant to municipalities the option of accepting the benefits of such legislation. See Wagner v. City of Newark, supra, 42 N.J. Super. 193, reversed on other grounds, 24 N.J. 467. An obvious example of this type of legislation is the Zoning and Planning Act of 1953 which gives to the various municipalities the option of adopting its provisions by ordinance.
Where, as here, the act of the Legislature is complete and the act of the governing body of the municipality has no relation to the operative effect of the legislation, the McGuinness case is not applicable. Schinck v. Board of *42 Education of Westwood Consolidated School District, 60 N.J. Super. 448, 457-458 (App. Div. 1960).
Plaintiff's contentions relating to the absence of standards governing the Director in promulgating rules and regulations under the act are without merit. State v. Daquino, 56 N.J. Super. 230 (App. Div. 1959), certification denied 30 N.J. 603 (1959), certiorari denied 361 U.S. 944, 80 S.Ct. 407, 4 L.Ed.2d 363 (1960). See also Moran, "General Administrative Law," 14 Rutgers L. Rev. 323, 327 (1960). "A vesting of some powers in some agencies, subject to no meaningful substantive standards to guide their exercise, should not be fatal, so long as a due processing of affected interests is alternatively secured by procedural prerequisites and/or adequate opportunities for judicial checks."
The Attorney General mentioned one thing as to the presumption of constitutionality of any statute of the Legislature, and I want this noted. The court notes that in considering the various issues it has recognized the fundamental principle that "There is a strong presumption that a statute is constitutional * * * and a Legislative Act will not be declared void unless its repugnancy to the Constitution is clear beyond a reasonable doubt." Harvey v. Essex County Board of Freeholders, 30 N.J. 381, 388 (1959); see also Masters' Jersey, Inc. v. Mayor and General Council of Paramus, 32 N.J. 296 (1960).
Mr. Hannoch, I think you should prepare the judgment in accordance with the court's findings, submit it to the Attorney General, and I will sign it.