CCH COMPUTAX, INC. *v.* OREST T. DUBNO, COMMISSIONER OF REVENUE SERVICES
(7167)

DUPONT, C. J., BORDEN and DALY, Js.

Argued March 1—decision released May 23, 1989

*Scott P. Moser,* with whom was *Antonio B. Braz,* for the appellant (plaintiff).

*Jane D. Comerford,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* acting attorney general, and *Joseph I. Lieberman,* former attorney general, for the appellee (defendant).

BORDEN, J. The plaintiff appeals from the judgment of the trial court rendered in favor of the defendant commissioner of revenue services on the plaintiff's appeal from the defendant's assessment of additional sales taxes. The sole issue is whether the computer and data processing services the plaintiff provides to its customers are rendered for resale in the ordinary course of business within the meaning of General Statutes § 12-407 (3). We find no error.

The defendant audited the plaintiff's sales tax returns for the period of October 1, 1980, through March 31, 1984, and assessed the plaintiff an additional amount of $197,541.50 plus interest. The plaintiff appealed to the trial court from that assessment pursuant to General Statutes § 12-422, claiming that it did not owe the additional amount (1) because it did not provide computer and data processing services under General Statutes § 12-407 (2) (i) (A), and (2) because its services were sold for resale in the ordinary course of business within the meaning of General Statutes § 12-407 (3), and thus were not subject to the sales tax imposed by General Statutes § 12-408. The parties stipulated to certain facts, which were supplemented by other facts found as a result of an evidentiary hearing. The court determined that the plaintiff did provide computer and data processing services,[1] and that the services were not sold for resale. From the ensuing judgment for the defendant, this appeal followed.

General Statutes § 12-408 (1) provides in pertinent part: "For the privilege of making any sales as defined in subsection (2) of section 12-407, *at retail,* in this state for a consideration, a tax is hereby imposed on all retailers at the rate of seven and one-half per cent of the gross receipts of any retailer . . . from the rendering of any services constituting a sale in accordance

---

[1] The plaintiff does not challenge that determination on appeal.

with subdivision (i) of subsection (2) of section 12-407
. . . . '' (Emphasis added.) General Statutes
§ 12-407 (2) (i) (A) includes computer and data process-
ing services. General Statutes § 12-407 (3) provides in
pertinent part: " 'Retail sale' or 'sale at retail' means
and includes a sale for any purpose *other than resale
in the ordinary course of business* . . . of any ser-
vice described in any of the subdivisions of subsection (2)
of this section." (Emphasis added.) General Statutes
§ 12-410 (1) provides in pertinent part: "For the pur-
pose of the proper administration of this chapter and
to prevent evasion of the sales tax it shall be presumed
that all gross receipts are subject to the tax until the
contrary is established. The burden of proving that a
sale of . . . service is not a sale at retail is upon the
person who makes the sale . . . ." Thus, the plain-
tiff's gross receipts from its sale of computer and data
processing services were taxable unless it established
that those services were sold to its customers for resale
in the customers' ordinary course of business.

The following facts are undisputed. The plaintiff, a
wholly owned subsidiary of Commerce Clearing House,
Inc., provides computer generated tax returns to its
customers, who are accountants, attorneys and banks.
Those customers professionally prepare tax returns for
their clients. The plaintiff's customers submit their
clients' financial information to the plaintiff on forms
supplied by the plaintiff. The plaintiff does not study,
analyze, alter or adjust any of the tax information fur-
nished to it. It processes the information through its
computer and thereby generates tax returns which it
ships to its customers. The plaintiff does not sign the
returns it produces or assume responsibility for their
correctness other than for the accuracy of the calcula-
tions performed, based on the information supplied by
the customers. The plaintiff's customers review the
returns and return them to the plaintiff for any cor-

rections. When the customers are satisfied with the returns, they sign them as preparers and submit them to their clients for execution and filing.

The plaintiff collects a basic charge for its services, plus additional amounts depending on the number of schedules, the amount of data on each page and certain calculation options. The basic charges range from $15 to $25 for a simple individual return to $60 or more for a complex individual return. The plaintiff's computer services also generate partnership and corporate returns. The plaintiff's charges are unrelated to the taxpayers' incomes or tax liabilities.

The plaintiff's customers pass the plaintiff's charges on to their clients either as part of their fees or as separate itemized expenses. Some of the plaintiff's witnesses were members of large accounting firms, who testified that their firms do not itemize the plaintiff's charges on their bills to their clients. Their fees range from approximately $150 for simple individual returns to several hundred dollars for more complex individual returns.

The plaintiff claims that the court erred by determining that the plaintiff's services were not sold for resale, because the undisputed facts compel the conclusion that the tax returns generated by the plaintiff are sold to its customers for resale to the clients of those customers. The plaintiff's argument in essence is the following syllogism: the plaintiff sells tax returns to its customers; the plaintiff's customers sell those tax returns to their taxpayer clients; therefore, those sales by the plaintiff to its customers are necessarily sales for resale. We disagree.

Although taxing statutes are strictly construed against the taxing authority, statutes creating tax exemptions are strictly construed against the party claiming the exemption. *White Oak Corporation* v.

*Department of Revenue Services,* 198 Conn. 413, 421, 503 A.2d 582 (1986). Thus, we must construe the sale for resale exemption strictly against the plaintiff. Id. The plaintiff has the burden to establish that it is entitled to the exemption. General Statutes § 12-410.

Whether a transaction involves services sold for resale or for some other purpose depends on the intention of the parties to the transaction. Id., 422. The court must determine the "true object" of the transaction among the parties; *Dine Out Tonight Club, Inc.* v. *Department of Revenue Services,* 210 Conn. 567, 571, 556 A.2d 580 (1989); *American Totalisator Co.* v. *Dubno,* 210 Conn. 401, 406, 555 A.2d 414 (1989); and the "primary purpose" for which those services were purchased and put to use. *American Totalisator Co.* v. *Dubno,* supra, 409. This determination must be made " 'in the light of the situation of the parties and the circumstances surrounding them.' " Id., 406, quoting *United Aircraft Corporation* v. *O'Connor,* 141 Conn. 530, 538, 107 A.2d 398 (1954). Moreover, when a transaction is merely incidental to a service performed for the purchaser, that transaction is not a sale for tax purposes. *White Oak Corporation* v. *Department of Revenue Services,* supra. Finally, in construing taxing statutes, like other statutes, common sense must be employed. See *Hall* v. *Planning Board,* 2 Conn. App. 49, 52, 475 A.2d 1114 (1984).

In this case, we cannot ignore the role played by the clients of the plaintiff's customers, because the transaction between the plaintiff and its customers is shaped by those clients and their needs. That role is integral to the situation of the immediate parties to the sale, namely, the plaintiff and its customers, and to the circumstances surrounding them; *American Totalisator Co.* v. *Dubno,* supra; because it determines whether the tax returns "sold" by the plaintiff to its customers are "resold" by those customers to their clients.

Contrary to the plaintiff's claim, the true object of the transaction between the taxpayers and the plaintiff's customers is not the purchase of a tax return. The plaintiff's characterization grossly oversimplifies the nature of that transaction. The taxpayer's primary purpose in engaging the services of a professional tax preparer is not to have someone merely perform what may be sophisticated calculations and to put them in their proper places on a tax return; rather, the taxpayer expects the preparer to render the professional expertise and judgment that are essential to a properly prepared tax return. There are no "sales" of tax returns by the preparers to their clients because the plaintiff's generation of unsigned tax returns and the furnishing of signed tax returns by the plaintiff's customers to their clients are "only incidental to [the professional] service performed for" those clients. *White Oak Corporation* v. *Department of Revenue Services,* supra.

These conclusions come from the undisputed facts of this case, their implications and common sense. It is inherent in the nature of the professional relationship between the plaintiff's customers and their clients that the customers apply their professional expertise in eliciting from the clients the proper tax information, in culling out what is irrelevant, and in reviewing that information before forwarding it to the plaintiff. That same expertise is brought to bear at the other end of the transaction, when the plaintiff's customers review the plaintiff's work product—the unsigned return—and send it back to the plaintiff for correction before signing it as preparer and forwarding it to the client for execution and filing.

This distinction between what the plaintiff sells to its customers, namely, computer and data processing services resulting in unsigned tax returns, and what those customers sell to their clients, namely, professional services reflected in tax returns signed by the

preparers, is underscored by their relative fee arrangements. Whereas the plaintiff's fees are based on a basic amount augmented by the number of schedules required and the amount of data required to be processed, the fees for the professional services of the plaintiff's customers are determined by the complexities of the returns and the amount of money involved, and thus reflect the degree of responsibility assumed.

We therefore agree with the trial court that the plaintiff failed to meet its burden of establishing that the sale of its computer services to its customers is a sale for resale and is not a sale at retail.

There is no error.

In this opinion the other judges concurred.