LASSER, P.J.T.C.
Taxpayer contests a sales tax deficiency assessment imposed by the Director of the Division of Taxation (Director) on “drop-shipment” sales of office furniture and systems purchased by out-of-state dealers and delivered by Steelcase, Inc. to the New Jersey locations of the ultimate purchasers. The Director determined that Steelcase made taxable sales in New Jersey which are not exempt as sales for resale under the New Jersey Sales and Use Tax Act, N.J.S.A 54:32B-1 et seq. (the act).
On March 20,1989, a notice of assessment was sent to Steelcase, imposing sales tax of $844,715 plus penalty and interest for the three-year period October 1, 1984 through September 30, 1987. The Director, on March 6, 1990, issued a revised final determination in the amount of $691,617 plus penalty and interest. The case was submitted to the court on cross-motions for summary judgment. The facts are not in dispute and were stipulated by the parties.
*185 Steelcase is a manufacturer and seller of office furniture and systems with its headquarters and principal place of business in Grand Rapids, Michigan. During the period at issue, Steelcase was registered to do business in New Jersey and was a New Jersey sales tax registrant. Steelcase leases approximately 50,000 square feet of warehouse space in North Bergen, New Jersey. During the period at issue, Steelcase had employees who resided in New Jersey and served as sales representatives, dividing their time among New Jersey, Pennsylvania and New York. These employees visited dealers and potential customers to explain products and programs and distribute catalogs.
Steelcase sells its products to independent, retail office-furniture dealers around the country (selling dealers), who carry Steelcase products as well as products manufactured by other office-furniture manufacturers. These selling dealers have customers who purchase and use office furniture. Many of the transactions involve purchases by national companies headquartered outside New Jersey for their branch offices located in New Jersey. Steelcase does not accept retail sale orders from end users; products are sold only to dealers. All orders are accepted in Grand Rapids, Michigan. The transactions at issue involve drop shipments. Steelcase enters into contracts of sale with selling dealers located outside New Jersey who give delivery instructions to Steelcase.
Upon purchase by the selling dealer, Steelcase products are shipped in one of three ways. The selling dealer directs Steelcase to ship the furniture to the dealer for storage in the dealer’s showroom or warehouse pending future delivery and installation by the dealer at the customer’s site, or the selling dealer instructs Steelcase to ship the furniture directly to the customer, or the selling dealer instructs Steelcase to ship the furniture to another dealer (installing dealer) who is closer to the customer’s job site and who arranges for installation of the furniture. A dealer may be a selling dealer in one transaction and an installing dealer in another transaction. The selling dealer selects the installing dealer, who installs the furniture on instructions from the selling dealer. During the period in issue, there were approximately ten *186 New Jersey dealers who performed installation services in New Jersey for out-of-state dealers.
Dealers participate in a Steelcase program known as the Office Environment Network. Under the network program, Steelcase determines dealer compensation and outlines the responsibilities of the selling dealer and installing dealer. Dealers have open accounts with Steelcase for the purchase of products. When a selling dealer incurs an installation charge owed to an installing dealer, Steelcase debits the open account of the selling dealer for the amount of the installation charge and credits it to the account of the installing dealer.
Steelcase ships furniture by common carrier, F.O.B. shipping points, and, in some instances, in one of its own trucks from its manufacturing or warehousing facilities. Of the transactions at issue, approximately 92% by dollar value were shipped by common carrier and approximately 8% by dollar value were shipped in trucks owned by Steelcase. Under the terms of the sales agreements between Steelcase and the selling dealers, the dealers take title to the product when it is delivered by Steelcase to the common carrier at shipping points located outside New Jersey. Title is in the dealer during transit. Dealers submit to Steelcase sale-for-resale exemption certificates of the state in which their dealership is located. In the transactions at issue, Steelcase shipped the goods directly to an installing dealer located in New Jersey, directly to the selling dealer’s customer in New Jersey, or directly to Steelcase’s warehouse in New Jersey.
In addition to shipping specific orders to its own warehouse, Steelcase maintains a small quantity of stock products in its New Jersey warehouse. During the period at issue, the average value of stock in the warehouse was $268,030. The deficiency assessment includes tax on two sales of warehoused furniture for resale totaling $1,026.13 to dealers with end users located outside New Jersey and six sales totaling $7,256.05 to dealers with end users located in New Jersey.
Steelcase contests the revised assessment, claiming that no tax is owed by Steelcase because: (1) the transactions in question are *187 exempt sales for resale, (2) the sales occurred entirely outside New Jersey, and (3) imposition of the sales tax unconstitutionally burdens interstate commerce in violation of the Commerce Clause, U.S. Const, art. I, § 8, cl. 3. Further, Steelcase contends that New Jersey cannot impose on it the obligation to collect use tax on these sales.
The Director contends that Steelcase is subject to New Jersey sales tax because: (1) transfer of possession of the furniture to end users occurred in New Jersey, and (2) sales to out-of-state dealers were not exempt sales for resale because Steelcase did not obtain New Jersey resale exemption certificates from the dealers. Further, Director states that Steelcase is required to collect New Jersey use tax because there exists substantial nexus between Steelcase and New Jersey by reason of the leased warehouse and other activities in this State. Director argues that New Jersey is not constitutionally prevented from imposing sales or use tax on the transactions in question or imposing tax collection duties on Steelcase. The Director concedes, however, that the subject transactions are sales to dealers for resale to the dealers’ customers. This case is one of first impression in New Jersey.[1]
I.
When an out-of-state vendor delivers a product to a common carrier in the vendor’s state for delivery to the vendee in New Jersey and the vendor has no physical presence (nexus) in New Jersey, Director concedes that the vendor has no obligation to collect sales or use tax from the New Jersey customer. Quill *188 Corp. v. North Dakota, 504 U.S. -, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992); McLeod v. J.E. Dilworth Co., 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304 (1943). However, if the vendor does have a physical presence in New Jersey by virtue of a warehouse and/or other activities within the state, Director contends that such presence is sufficient to impose on the vendor an obligation to collect sales or use tax. McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940); McGoldrick v. Felt & Tarrant Mfg. Co., 309 U.S. 70, 60 S.Ct. 404, 84 L.Ed. 584 (1940); McGoldrick v. A.H. DuGrenier, 309 U.S. 70, 60 S.Ct. 404, 84 L.Ed. 584 (1940).
Director argues that transfer of possession occurs in New Jersey when possession is delivered to the customer by a common carrier and it is this transfer of possession in New Jersey that is a taxable New Jersey transaction, N.J.S.A 54:32B-2(f), for which Steelease must collect sales tax. Director also contends that there is sufficient nexus to require Steelease to collect use tax from the customer.
Taxpayer argues that the sales and use tax is a transactional tax and, if there is no relation between the vendor’s physical presence in New Jersey and the sale transaction, the unrelated physical presence is insufficient to impose collection and tax responsibilities on the vendor. Taxpayer contends that New Jersey may look only to the subject transaction to determine the responsibility of the vendor.
The combination of physical presence in New Jersey and transfer of possession in New Jersey is sufficient to impose on the vendor an obligation to collect the sales and use tax in a two-party transaction. Falcone v. Taxation Div. Director, 12 N.J.Tax 75 (Tax 1991). The subject case, however, involves drop-shipment, three-party transactions—sales by an out-of-state vendor to out-of-state dealers whose orders include directions to ship the products to the dealers’ customers in New Jersey.
I conclude that the same principles that govern two-party transactions also apply to three-party transactions. The vendor is aware that the transfer of possession of the product occurs in New *189 Jersey. If the vendor has no physical presence in New Jersey, the vendor has no obligation to collect sales or use tax. But if the vendor has a physical presence in New Jersey, the vendor has the obligation to collect the sales or use tax unless the transaction is an exempt sale for resale. See National Geographic v. California Bd. of Equalization, 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977); Nelson v. Montgomery Ward & Co., 312 U.S. 373, 61 S.Ct. 593, 85 L.Ed. 897 (1941); Nelson v. Sears, Roebuck & Co., 312 U.S. 359, 61 S.Ct. 586, 85 L.Ed. 888 (1941).
II.
The act defines “sale” as:
Any transfer of title or possession or both, exchange or barter, rental, lease or license to use or consume, conditional or otherwise, in any manner or by any means whatsoever for a consideration, or any agreement therefor, including the rendering of any service, taxable under this act, for a consideration or any agreement therefor.
[N.J.S.A 54:32B-2(f).]
Building on this definition, the act defines a “retail sale” as: “A sale of tangible personal property to any person for any purpose, other than for resale____” N.J.S.A 54:32B-2(e)(l) (emphasis added). During the years in issue, the act imposed a 6% sales tax on the receipts from every retail sale of tangible personal property in New Jersey. N.J.S.A 54:32B-3(a). In addition, a New Jersey compensating use tax is imposed on tangible personal property purchased out of state and subsequently used in New Jersey. The act defines “use” as:
The exercise of any right or power over tangible personal property by the purchaser thereof and includes, but is not limited to, the receiving, storage or any keeping or retention for any length of time, withdrawal from storage, any installation, any affixation to real or personal property, or any consumption of such property.
[N.J.S.A. 54:32B-2(h).]
The use tax is imposed as follows:
Unless property or services have already been or will be subject to the sales tax under this act, there is hereby imposed on and there shall be paid by every person *190 a use tax for the use within this State of 6%, except as otherwise exempted under this act____
[N.J.S.A 54:32B-6.]
The vendor in the subject three-party transactions contends that the sales are exempt transactions because they are sales for resale.
Section 12(b) of the act relieves a vendor of the burden of proving that a transaction is not subject to tax when an exemption certificate is accepted in good faith.
(b) For the purpose of the proper administration of this act and to prevent evasion of the tax hereby imposed, it shall be presumed that all receipts for properly ... are subject to tax until the contrary is established, and the burden of proving that any such receipt ... is not taxable hereunder shall be upon the person required to collect tax or the customer. Unless a vendor shall have taken from the purchaser a certificate, signed by the purchaser and bearing his name and address and the number of his registration certificate, to the effect that the property or service was purchased for resale, ... the sale shall be deemed a taxable sale at retail.
[N.J.S.A 54:32B-12(b) (emphasis added).]
The Director has promulgated regulations requiring possession, retention and inspection of exemption certificates in general:
(a) All certificates whether single purchase or blanket, accepted in good faith by a vendor as a basis for exemption from any tax imposed by the [Act] shall be retained by said vendor for a period of not less than three years from the date of the last use of such certificate as a basis for exemption.
(b) The certificate must be in the physical possession of the seller or lessor, and available for appropriate inspection, on or before the 60th day following the date of the transaction to which the certificate relates.
(c) Where a certificate is not made available for inspection on or before that time, the seller or lessor must prove to the satisfaction of the Director, by means of evidence other than certification of the purchasers, that the sale or lease in question is, in fact, exempt.
(d) In the absence of such proof the transaction will be deemed taxable and assessed as such.
[N.J.AC. 18:24r-10.6 (emphasis added).]
Section 12(b) of the act creates a presumption that ail receipts for the sale of tangible personal property are taxable. The statute permits vendors to overcome the presumption of taxability by establishing the receipt of a resale certificate bearing a purchas *191 er’s registration number. Where a vendor fails to establish that a resale certificate was received from the purchaser, the statute deems the sale a taxable sale at retail. The regulations require that a vendor receive an exemption certificate within 60 days of the date of the transaction and retain the certificate for a minimum of three years.
Section 10.6(c) of the regulations permits a vendor, in the absence of an exemption certificate, to present other evidence to establish to the satisfaction of the Director that a transaction is exempt. Absent possession of an exemption certificate and absent other evidence establishing to the Director’s satisfaction that the transaction is indeed exempt, the regulations deem the transaction taxable.
In spite of the specific wording of § 10.6(c) of the regulation to the contrary, Director here contends that § 12(b) of the statute requires an official New Jersey exemption certificate, and argues that, in the absence of such certifícate, it is conclusively presumed that the sale is not an exempt sale for resale. Director argues that § 10.6(c) of the regulations is incorrect because the statute creates a presumption of taxability that can be rebutted only by a New Jersey exemption certificate.[2] Director concedes that evidence other than an exemption certificate may suffice to establish other exemptions under the statute but, based on the wording of the statute, not a sale-for-resale exemption. Director contends, therefore, that a seller cannot establish that a sale for resale is an exempt transaction on the basis of evidence other than possession of a New Jersey sale-for-resale certificate.
Director contends that the wording of N.J.S.A 54:32B-12(b), “unless a vendor shall have taken from the purchaser a certificate [the sale] ... shall be deemed a taxable sale at retail,” indicates intent on the part of the Legislature that failure to provide a valid New Jersey resale exemption certificate gives rise to a conclusive presumption that the sale is a taxable sale at retail.
*192 Absent requisite proof, both the statute and regulations presumptively deem the transaction taxable. The meaning of the word “deemed” is central to evaluating the presumption created by § 12(b) of the act and the regulations. The word “deemed” is commonly defined: “To hold; consider; adjudge; believe; condemn; determine; treat as if; construe.” Black’s Law Dictionary 374 (5th ed. 1979). Whether or not the word “deemed” creates a conclusive presumption or a rebuttable presumption depends on the intent of the Legislature as indicated by the context of the use. Switz v. Kingsley, 69 N.J.Super. 27, 33, 173 A.2d 449 (Law Div.1961) (citing Brimm v. Cache Valley Banking, 2 Utah 2d 93, 269 P.2d 859, 863 (1954), aff'd, 37 N.J. 566, 182 A.2d 841 (1962)).
I find that the statute does not create a conclusive presumption, as Director argues. A conclusive presumption exists when an ultimate fact is presumed to be true upon proof of another fact, and no evidence, no matter how persuasive, can rebut it. McInerney v. Berman, 473 F.Supp. 187, 188 (D.C.Mass. 1979), cert. den., 449 U.S. 867, 101 S.Ct. 201, 66 L.Ed.2d 85 (1980). A conclusive presumption is an artificially-compelling force which requires a trier of fact to find that such fact is conclusively presumed and evidence to the contrary is inadmissible. Exxon Corp. v. Cosby-Mississippi Resources, Ltd., 775 F.Supp. 969, 976 (S.D.Miss.1991).
The Director’s regulation interpreting the statute is to be given substantial weight. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562-63, 384 A.2d 795 (1978). Regulation § 10.6(c) allows for other evidence of the nature of the transaction. A conclusion that the retail sale presumption may be overcome by other evidence is appropriate when the statute and regulation are taken in context with the intent of the sales and use tax to impose tax on the retail consumer at the point of final consumption and the intent to avoid pyramiding of the tax by not imposing it on a series of transactions which may precede the sale to the end user as goods move along channels of distribution *193 toward the marketplace.[3]
A drop-shipment transaction is a three-party transaction which masks the fact that there are actually two transactions, the sale from Steelcase to the out-of-state dealer and the sale from the out-of-state dealer to the dealer’s customer in New Jersey. If Steel-case were to ship its product to the out-of-state dealer, the New Jersey sales and use tax could not be imposed on that transaction. If the out-of-state dealer has no nexus with New Jersey and ships the product to the New Jersey customer by common carrier, Quill, supra, prevents New Jersey from imposing a tax-collection obligation on the dealer. Director here seeks to telescope these two separate transactions into a sale by Steelcase to the New Jersey customer in order to impose on Steelcase the obligation to collect either a sales tax or a use tax on the transactions. Two obvious problems arise. Is Director seeking to collect a tax on the wholesale price of the Steelease-dealer transaction or the retail price of the dealer-New Jersey customer transaction? Can Steel-case be expected to collect tax on the retail price, which it does not know? If it must collect tax on the wholesale price, then it is apparent that it is the sale from Steelcase to the dealer that is being taxed. Since Director does not recognize the sale from Steelcase to the dealer as a sale for resale, can Director collect a use tax from the dealer’s New Jersey customer on the retail price or on the differential between the wholesale and retail price?
Further, assume that the product is toothpaste rather than office furniture, and nexus exists between the manufacturer and New Jersey but not between New Jersey and an out-of-state dealer who sells the toothpaste to a New Jersey retailer (K-Mart for example) and orders the manufacturer to ship directly to the retailer. New Jersey contends that the manufacturer would have to collect tax from the out-of-state dealer. The retailer would, in the ordinary course of its business, collect a second tax from the consumer at the cash register. Further difficulty arises when the *194 drop shipment is to the retailer’s warehouse where goods are held for ultimate sale in the retailer’s stores in New Jersey, New York and Connecticut. By seeking to impose a tax at the wholesale level, Director, in an effort to require others to collect tax for the State, departs from the legislative intent to impose tax at the retail level and exposes the flow from manufacturer to market place to multiple taxation.*
Additionally, Director seeks to force collection of tax from an out-of-state dealer having no nexus with New Jersey or, in the alternative, to force the out-of-state dealer to register in New Jersey in order to be able to provide the manufacturer with a New Jersey exemption certificate. Registration appears to carry with it the obligation to collect tax for New Jersey and be subject to audit by New Jersey.[4]
[5] Thus, Director seeks indirectly to compel an out-of-state dealer with no New Jersey nexus to collect New Jersey tax, contrary to Quill, supra. Further, office furniture manufacturers with no nexus with New Jersey are given a competitive advantage because they can drop ship to New Jersey customers without obligation to collect New Jersey tax. This raises Commerce Clause questions and smacks of discrimination against interstate commerce. Although a transfer of possession may occur in New Jersey, it is not between seller and purchaser. In reality, the sale is between the non-nexus, out-of-state dealer and the New Jersey purchaser.
*195 I am mindful of the administrative difficulty encountered by the State in seeking to enforce the use tax on New Jersey purchasers who buy from out-of-state vendors and the desire by the Director to impose that collection duty on the out-of-state vendors, however, the transactions sought to be taxed in the instant case are concededly sales for resale. The New Jersey statute taxes retail sales. The intent of the Legislature, as indicated by Director’s regulation, is to exempt sale-for-resale transactions to avoid tax pyramiding, and to permit proof of the nature of the transaction by a New Jersey exemption certificate or by other evidence of the nature of the transaction.
Taxpayer may submit proof to Director that drop-shipment transactions are sales for resale. Director shall consider such proof, and where the Director is satisfied that the sale is a sale for resale, the transaction shall be exempt from tax and Steelcase shall not be obligated to collect a sales tax or a use tax. Sales to dealers from Steelcase’s New Jersey warehouse either for out-of-state or in-state delivery, if they are sales for resale, are not taxable to Steelcase by New Jersey.
The parties shall agree on the amount of the deficiency assessment in accordance with Rule 8:9-3 and submit a form of judgment to the court.

Only one published opinion addressing state-imposed taxation of a three-party sale for resale, drop shipment, has been found. In 1988, the New York State Tax Commission held:
Although the affidavits and resale certificates were not in strict compliance with the [state statute and regulations], said affidavits and resale certificates contained such information as to sufficiently enable petitioner to sustain its burden of proof that each of its sales herein were sales for resale and, as such, were exempt from the imposition of sales tax____
[In re Steelcase, Inc., 1988 WL 167746 at * 4, 1988 N.Y.Tax LEXIS 327 at * 9-10 (July 3, 1988) (emphasis added).]

 The statute does not specify that the certificate be a New Jersey exemption certificate.

 See Norman Redlich, Note, Sales Taxes and the Resale Exemption in the Manufacture and/or Distribution of Personal Property, 9 Tax L.R. 435 (1954).

 The United States Supreme Court decision in Complete Auto Transit Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), although not a transactional tax case, includes fair apportionment as a test of Commerce Clause constitutionality and has been relied on in sales and use tax cases. See Quill, supra, - U.S. at -, -, 112 S.Ct. at 1911-12, 1915, 119 L.Ed.2d at 105, 109.

 A recent survey by the Institute of Property Taxation indicates that ten states would not regard the sale from Steelcase to the out-of-state dealer as a taxable transaction, twelve states will accept a resale certificate from the dealer’s state, and eight states will accept any documentation sufficient to establish a sale for resale. Eighteen states and the District of Columbia require a resale certificate of the delivery state.