[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Steelcase Inc. ("Steelcase"), the plaintiff in this tax appeal, manufactures office furniture in Michigan. This case has come about because of the somewhat unorthodox way in which some CT Page 10200 Connecticut consumers have acquired its furniture.
The relevant facts have been stipulated. Steelcase is a Michigan corporation and manufactures its furniture in Grand Rapids, Michigan. It has a showroom in Hartford, Connecticut, but it is agreed that the Connecticut showroom played no role in the transactions at issue here. In these transactions, Steelcase sold its furniture to retailers located outside the State of Connecticut. Each retailer gave Steelcase a resale certificate in a form acceptable in the retailer's state, and Steelcase took this certificate in good faith. Steelcase signed a sales contract with the out-of-state retailer. It did not sign a sales contract with anyone else. There is, in addition, no evidence of an oral contract with any third party.
In each transaction, the out-of-state retailer then sold the furniture to a Connecticut consumer. The consumer paid the retailer. Steelcase was not a party to whatever sales contract existed between the retailer and the consumer, and, whatever the consumer paid the retailer, it paid Steelcase nothing.
Steelcase then completed what turns out to have been a triangular transaction by shipping its goods directly to the Connecticut consumer. The reasons for this do not appear in the record. The shipment was done by common carrier. Steelcase hired the carrier, and placed the furniture on the carrier at its Michigan plant. The transporting vehicle was neither owned nor leased by Steelcase. Under the sales contract between Steelcase and the retailer, title to the furniture passed from Steelcase to the retailer upon delivery to the carrier in Michigan. The retailer was responsible for making arrangements for unloading the furniture in Connecticut. Steelcase had no involvement in these arrangements.
This tax appeal has resulted from the fact that the Department of Revenue Services ("DRS") has chosen to impose a sales tax on Steelcase for its role in this transaction. The DRS specifically claims that the delivery of the furniture by Steelcase to the ultimate Connecticut consumer was a retail sale, as that term is defined in Conn. Gen. Stat. § 12-407(3). The assessment of tax, however, was based on the price charged by Steelcase to the retailer rather than on the price paid to the retailer by the ultimate consumer. The DRS justifies this by assertions of administrative convenience rather than by tax philosophy. It knows the price paid by the retailer; it does not CT Page 10201 know the price paid by the ultimate consumer.
Was the decision of the DRS proper? This is a case of first impression in Connecticut and one of only second impression in the nation. Interestingly, the only published judicial opinion addressing state taxation of a triangular transaction like the one here (technically called a three-party sale for resale, drop shipment) also involves Steelcase. Steelcase, Inc. v. Director,13 N.J. Tax 182 (N.J. Tax Ct. 1993). In that decision, the Tax Court of New Jersey held that imposition of the New Jersey sales tax on Steelcase was improper if it could be factually proven that the transactions involved were sales for resale. The New Jersey case is arguably distinguishable both because of some distinctive language in the Connecticut sales tax statute, discussed below, and because the New Jersey Division of Taxation arguably relied on a different theory of taxation than did the DRS here, but the analysis of the Tax Court New Jersey nevertheless has great persuasive force. It is best to begin the analysis here, however, by examining the relevant statutory text.
Conn. Gen. Stat. § 12-408(1) imposes a tax "[f]or the privilege of making any sales . . . at retail." "Sale at retail" is a defined term. Section 407(3) provides that:
 (3) "Retail sale" or "sale at retail" means and includes a sale for any purpose other than resale in the regular course of business of tangible personal property or a transfer for a consideration of the occupancy of any room or rooms in a hotel or lodging house or space in a campground for a period of thirty consecutive calendar days or less, or the rendering of any service described in any of the subdivisions of subsection (2) of this section. The delivery in this state of tangible personal property by an owner or former owner thereof or by a factor, if the delivery is to a consumer pursuant to a retail sale made by a retailer not engaged in business in this state, is a retail sale in this state by the person making the delivery. He shall include the retail selling price of the property in his gross receipts.
The relationship between the first and second sentences of § 12-407(3) poses a problem that lies at the heart of this case. The first sentence states that a retail sale "includes a sale forany purpose other than resale." (Emphasis added.) If the CT Page 10202 definition consisted only of this sentence, Steelcase would be home free, as it were, because, as will be shown, it is extremely difficult to characterize its sales activity here as having a purpose other than that of resale. The second sentence, however, is much more problematic. It provides that, "The delivery in this state of tangible personal property by an owner or former owner thereof or by a factor, if the delivery is to a consumer pursuant to a retail sale made by a retailer not engaged in business in this state, is a retail sale in this state by the person making the delivery." This sentence omits any mention of sales for resale. What is the significance of this omission?
One way to look at this omission is that it makes the existence of a purpose to resell irrelevant if the stated elements of the second sentence are satisfied. The purpose of § 12-407(3) is to define the term "retail sale," and the second sentence can be read as a self-contained, independent definition of that term. In this case, however, "[l]egislative intent . . . is not to be found in an isolated sentence." McAdams v.Barbieri, 143 Conn. 405, 418, 123 A.2d 182 (1956). "[T]he legislature is presumed to enact legislation that renders the body of the law coherent and consistent, rather than contradictory and inconsistent." Fahy v. Fahy, 227 Conn. 505,513, 630 A.2d 1328 (1993). If the sales and use tax law of Connecticut is to be coherent and consistent, the entire definition of "retail sale" set forth in § 12-407(3) must be read as excluding sales for resale.
I reach this conclusion for two separate reasons. First, it is extremely common to structure sales and use taxes "so as to exclude or exempt from tax many intermediate transactions in the economic process." II Jerome R. Hellerstein Walter Hellerstein, State Taxation 14-2 (1992). In particular, "[a]rticles produced for resale as tangible personal property are excluded from the sales tax by virtually all States." Id. at 14-3.
Second, and even more important, another provision of the Connecticut sales and use tax statutory scheme must also be considered. Section 12-410(1) provides that:
 For the purpose of the proper administration of this chapter and to prevent evasion of the sales tax it shall be presumed that all gross receipts are subject to the tax until the contrary is established. The CT Page 10203 burden of proving that a sale of tangible personal property or service is not a sale at retail is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale.
Two questions must be considered with respect to this statute: (a) what is the relationship between its two constituent sentences, and (b) what is the relationship between it and § 12-407(3).
The relationship between the two sentences of § 12-410(1) is fairly straightforward. The first sentence sets forth a presumption. It presumes that the sales tax applies "until the contrary is established." The second sentence addresses the burden of proof. The second sentence sets forth a shifting burden of proof. If there is no resale certificate, the burden of proof is on the taxpayer. It clearly follows from this that if there is a resale certificate, the burden of proving that the sale is one at retail falls on the DRS.
Section 12-410(1) is cast in terms of presumptions and burdens of proof. But that section is, in its own words, designed "[f]or the purpose of the proper administration of thischapter." (Emphasis added.) It plainly rests on an implicit assumption as to the content of the substantive law of that chapter. That assumption is that if a particular sale is genuinely a sale for resale, it is exempt from the sales tax. Absent this assumption, the shifting burdens of proof set forth in § 12-410(1) make no sense.
It follows from this analysis that, if the sales and use tax law is to be read as a coherent whole, § 12-407(3) must be read as exempting from taxation all sales for resale. Cf. CCHComputax, Inc. v. Dubno, 18 Conn. App. 434, 436, 558 A.2d 270
(1989) ("[T]he plaintiff's gross receipts from its sale of computer and data processing services were taxable unless it established that those services were sold to its customers for resale . . . ."). This specifically means that the second sentence of § 12-407(3) implicitly contains such an exemption. If this exemption is not read into the second sentence of § 12-407(3), the second sentence of § 12-410(1) — which on its face applies to all sales — does not make sense. For these reasons, the pivotal question in this case is whether the sales at issue here were bona fide sales for resale. In light of the wording of the CT Page 10204 first sentence of § 12-407(3), this means that the pivotal question is whether the sales had a "purpose" other than resale.
It is stipulated that Steelcase received resale certificates in each transaction at issue. Under § 12-410(1), this fact shifts the burden of proof to the DRS to show that somehow these were not bona fide sales for resale. But it is also stipulated that the certificates were acceptable in the retailer's state and that Steelcase took them in good faith. See Conn. Gen. Stat. § 12-410(2). What more, it might well be asked, could Steelcase have done? Under these circumstances, the DRS has not satisfied its burden of proof.
This conclusion is reinforced by other considerations. First, looking at the overall transaction, it is clear that if Steelcase had shipped its furniture to the out-of-state retailers and those retailers had thereupon shipped the furniture to the ultimate Connecticut consumers, Connecticut could not tax Steelcase for its part in the transaction. Under these circumstances, the correct approach would plainly be to impose a use tax on the Connecticut consumer. Why should things be different if the furniture is shipped directly from Steelcase to the Connecticut consumer? This is an economically more efficient method of completing the transaction (an efficiency that the position of the DRS necessarily discourages). But the actual flow of dollars remains the same. The most appropriate method to tax this transaction remains the imposition of a use tax on the consumer.
Second, obvious problems arise from the fact that the DRS is measuring the tax by reference to the wholesale price paid by the out-of-state retailer rather than the retail price paid by the consumer. The DRS assumes that the wholesale price is no greater than the retail price but, while this is indeed probable, it is not a certainty. Motion picture aficionados may recall Woody Allen's remark in Annie Hall that the biggest sin in his family was buying retail. Some talented shoppers (more talented, alas, than the author of this opinion) do occasionally purchase items at less than the wholesale cost. Retailers do occasionally sell items below cost as loss leaders or as part of genuine going-out-of-business sales. Such events are rare, but they do happen. We simply do not know whether they happened here, because neither Steelcase nor the DRS knows the retail price.
This is not the only problem. Some additional problems are CT Page 10205 recognized by the Tax Court of New Jersey in its Steelcase case. What if the Connecticut consumer does the right thing and files a use tax return on his purchase? Since the DRS does not recognize the sale from Steelcase to the retailer as a sale for resale, should the DRS collect a use tax from the consumer on the retail price? Is it limited instead to the differential between the wholesale and retail price? See 13 N.J. Tax at 193. What if, as just discussed, the retail price is actually less than the wholesale price?
And consider the following scenario, similar to another hypothetical posed by the Tax Court of New Jersey.13 N.J. Tax at 193. Suppose that the out-of-state retailer sold the furniture it purchased from Steelcase not to an ultimate consumer but to a Connecticut retailer which in turn sold the furniture to the public. Suppose further that Steelcase had shipped its furniture to the Connecticut retailer. It would make no sense to say that Steelcase would be obliged to pay a sales tax on this transaction. For one thing, the Connecticut retailer would, in the ordinary course of its business, collect a second tax from the consumer at the cash register. For another thing, the second sentence of § 12-407(3) would not on its face apply because the delivery by Steelcase is not to a "consumer." But from the point of view of Steelcase, the economics and the logistics of the transaction are exactly the same as they are in the transaction at issue here. The tax law should treat both transactions in the same way.
For these reasons, I conclude that imposition of the sales tax on Steelcase in the transactions at issue here violated the legislative scheme implicit in the sales and use tax law. Judgment shall enter for the plaintiff.
The parties shall submit proposed orders consistent with this opinion within twenty days of the date the opinion is filed.
Jon C. Blue Judge of the Superior Court CT Page 10206